# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

February 17, 2015

**BY ECF AND HAND**
Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007

Re: <u>**United States v. Suren Gadayev**</u>
**15 Cr. 066 (LTS)**

Dear Judge Swain:

I respectfully write on behalf of my client, Suren Gadayev, in anticipation of his bail hearing scheduled for Thursday, February 19, 2015.

Mr. Godayev was detained after a hearing before Magistrate Judge Sarah Netburn on January 26, 2015. <u>See</u> Transcript, Defense Exhibit A. The Government argued that Mr. Gadayev should be detained on the issue of danger to the community, agreeing that he is not a risk of flight. Pretrial Services, interviewed Mr. Gadayev and recommended essentially that he be released on an unsecured Personal Recognizance Bond to be co-signed by one financially responsible person.

Because Mr. Gadayev is correctly not perceived as a risk of flight, additional co-signers or a bond secured by property is not warranted. We propose the following conditions of release which we believe addresses the Government's concerns: A $100,000 unsecured Personal Recognizance Bond to be co-signed by three financially responsible persons, with strict Pretrial Supervision.

### Mr. Gadayev's Strong Roots In The Community

Mr. Gadayev has no prior criminal record. He is married for the past 17 years and has 4 children, ages 7, 9, 11, and 16 years old. He is a naturalized United States citizen who came to the United States with his parents when he was just 11 years old, approximately 25 years ago. He became a citizen, along with his parents, when he was 16 years old. His parents have lived in the

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York

Page 2
February 17, 2015

Re: **United States v. Suren Gadayev**
     **15 Cr. 066 (LTS)**

same location in Forest Hills for the entire period of time in this country. He has one brother and a large extended family in the New York area. By profession, he is a skilled barber but he has been out of work for the past 18 months. He has a reputation in the community as a religious man, who is honest and non-violent. He is active in his local temple and well known by the Rabbi for that temple.

The Government alleged at Presentment that Mr. Gadayev possessed a rifle. This is true. He purchased the rifle to use for target shooting at a house the family owned in upstate New York. The purchase was legally made and Mr. Gadayev filled out all the necessary paperwork to register the rifle. It is not illegal to possess the rifle. The rifle was kept in his upstate house until approximately 4 months ago when a fire destroyed the house. Approximately one month before the fire, the house was burglarized and Mr. Gadayev filed a police report. It was suggested that he remove the rifle from the house so that it could not be stolen. It is currently in his mother's home.

### The Offense

Mr. Gadayev is charged in a two count Indictment with Conspiracy to Commit Extortion and Extortion. The alleged victim is a long time friend of Mr. Gadayev whom he has known for almost 25 years. As alleged in the Criminal Complaint, the alleged victim approached Mr. Gadayev because he knew that he was not working and was not doing well financially. See Complaint, Defense Exhibit B. He offered to mentor Mr. Gadayev in the area of real estate. Mr. Gadayev accepted the offer. Mr. Gadayev was advised about the purchase of a certain property which could be renovated and resold for a profit.

In order to engage in the transaction of the purchase and renovation of the property, Mr. Gadayev needed financing. Because he was not working, he bought in Ilya Petrov, his co-defendant, to assist in obtaining the necessary funding. The alleged victim was actively involved in the purchase, renovation, and sale of the property. He found contractors for the renovation as well as purchasers for the property. Ultimately, the property was sold at a loss and Petrov, not Mr. Gadayev, blamed the alleged victim.

Re: **United States v. Suren Gadayev**
    **15 Cr. 066 (LTS)**

There were numerous meetings between Mr. Gadayev, Petrov and the "victim," prior to the "victim" reporting this incident to law enforcement. None of these meetings involved any threats. Eventually, the "victim" agreed to compensate for part of the loss. He had a change of heart, and went to the FBI, for whom he had previously worked as an informant in return for a reduced sentence in a wire and mail fraud case. The "victim" arranged two more meetings and this time he recorded it pursuant to FBI directions.

According to allegations set forth in the complaint, Mr. Gadayev never threatened the "victim" at these meetings. It appears that some threats were issued by Petrov. Mr. Gadayev's language at the meeting was one of a "peacemaker" when it appeared that the conversation was becoming heated. Additional recorded calls were between the "victim" and Petrov. Mr. Gadayev was not involved in these calls. In fact it is alleged that the "victim" met with Petrov on two or more occasions without Mr. Gadayev after the two meetings which were recorded. At the direction of the FBI, the "victim" gave Petrov not Gadayev, two checks.

The Government has previously argued that after payment was stopped on one of the checks, Mr. Gadayev appeared at the home of the father of the victim. The Government asks that this appearance be interpreted as one of intimidation although no words were spoken by Mr. Gadayev from which one could draw that conclusion. Mr. Gadayev knows the victim's father well and has been at his house before. He appeared at his home because he was calling the "victim" to find out why the check was stopped and the victim had not been answering his phone. He wanted to ask the father about the checks and have him ask the "victim." Since he knew the father and had been at his home before, he didn't feel that stopping by was unusual or threatening.

The Government also makes much reference to an incident that took place years earlier in which it is alleged that the "victim's" cousin was beaten. It should be noted that the complaint specifically states that the victim alleged that Petrov was responsible for a beating to his cousin, not Gadayev. See Complaint at p. 2 paragraph 4. It is also alleged that the FBI examined the cousin's text messages related to this incident and

found only messages from Petrov, not Gadayev. Complaint, paragraph 6.

## CONCLUSION

Based on strong roots in the community, Mr. Gadayev's lack of any criminal history, and minimal, if any, role in the offense, we urge the Court to grant the bail package requested.

Respectfully submitted,

Robert M. Baum
Assistant Federal Defender


cc: Russell Capone, Esq.
　　Assistant U.S. Attorney