UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA        :

      - v -                     :
                                               15 Cr. 66 (LTS)
SUREN GADAYEV                   :

           Defendant.      :
------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUREN GADAYEV'S MOTION TO SUPPRESS EVIDENCE AND SEVERANCE

                                                    DAVID E. PATTON, ESQ.
                                                    Federal Defenders of New York
                                                    Attorney for Defendant
                                                      **SUREN GADAYEV**
                                                    52 Duane Street - 10th Floor
                                                    New York, New York 10007
                                                    Tel.: (212) 417-8700


**ROBERT M. BAUM, ESQ.**

    Of Counsel

TO:   PREET BHARARA, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn:  **RUSSELL CAPONE, ESQ.**
             Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA        :

       - v -                    :     15 CR. 66 (LTS)

SUREN GADAYEV                   :

            Defendant.          :
------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUREN GADAYEV'S MOTION TO SUPPRESS EVIDENCE AND SEVERANCE

### PRELIMINARY STATEMENT

Defendant Suren Gadayev, by undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion To Suppress Statements on the ground that statements taken violated his rights under the Fifth and Sixth Amendment to the United States Constitution. In addition, Mr. Gadayev moves for severance of the trial from his co-defendant.

Mr. Gadayev is charged in a two count Indictment with Conspiracy to Commit Extortion and Extortion.

### STATEMENT OF FACTS

As set forth in the attached Affirmation of counsel, as well as that of Suren Gadayev, Mr. Gadayev was indicted and charged in a two count Indictment with Conspiracy to Commit Extortion and

Extortion. See Baum Affirmation (hereinafter "Baum Aff."), at ¶ 5; Exhibit A.

On January 26, 2015, Mr. Gadayev was arrested by two F.B.I. agents, handcuffed, and transported by car to F.B.I. offices. See Gadayev Affirmation (hereinafter "Gadayev Aff.") at ¶2. During the trip to F.B.I. offices, Mr. Gadayev was questioned without the benefit of Miranda warnings. Gadayev Aff. at ¶3. He discussed the underlying circumstances concerning the crimes for which he had been arrested. Gadayev Aff. at ¶4.

Shortly after he arrived at F.B.I. offices, Mr. Gadayev was taken to a room, handcuffed to a bar on the wall, and again questioned by the same two F.B.I. agents who had arrested him, transported him by car, and questioned him previously. Gadayev Aff. at ¶6. The questioning began when one of the agents told him "we already did this one time and we are going to do it again." Gadayev Aff. at ¶7. Mr. Gadayev knew that the topic they wanted to question him about was the same topic he had already been questioned about in the car.

This time, the agents showed Mr. Gadayev a piece of paper and read him his Miranda rights. He was asked whether he was willing to answer questions without a lawyer present. Mr. Gadayev was concerned about the rights he was read, particularly answering questions without a lawyer present. Mr. Gadayev raised two issues with the agents and they only addressed one of his

concerns. He specifically asked "without a lawyer's presence, isn't that against me?" Baum Aff. at ¶10. Mr. Gadayev's concern was that an attorney's presence would ensure that he wouldn't say anything that would be held against him. Mr. Gadayev was told that "if you want a lawyer you can ask for a lawyer, but it is not held against you." The second agent also said, "it's not held against you." Baum Aff. at ¶11.

One agent saw that Mr. Gadayev was obviously confused about his rights and that he did not understand a crucial provision. He told Mr. Gadayev, "if you want a lawyer you can ask for a lawyer but its not held against you." Although the agents tried to explain that he could stop at any time, there was no clear explanation of the statement made by both agents that "it's not held against you." An explanation about having a lawyer present was ineffective because it left the impression that even without a lawyer, "it's not held against you." Mr. Gadayev signed the form and agreed to talk because he thought that even without a lawyer, his words would not be held against him. Gadayev Aff. at ¶10.

It is clear that Mr. Gadyev was confused about his right to counsel and whether any statement could be held against him. The agents never clarified this confusion. The ensuing waiver of <u>Miranda</u> was not knowing and voluntary and the statements made must be suppressed. Mr. Gadayev did not fully understand the

-4-

rights he was waiving or the consequences.

When Mr. Gadayev was brought into the room for questioning, he was told, "we already did this one time and we are going to do it again." Mr. Gadayev understood that they expected him to talk about the same facts he discussed in the car. Gadayev Aff. at ¶7. The second statement, at F.B.I. headquarters made following Miranda rights, must be suppressed independently, as it was a product of a deliberate, strategic two step interrogation which was designed to undermine the effectiveness of the Miranda warnings producing a statement that is less than voluntary.

At a joint trial with co-defendant Ilya Petrov, the Government will seek to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, that on a prior occasion, Petrov committed a similar uncharged extortionate act to attempt to collect a business debt. On that occasion, the Government will seek to show that acts of violence to compel a payment were actually committed by Petrov. Such evidence would not be admissible against Mr. Gadayev if he were tried separately.

Such similar conduct, involving acts of violence to collect a business debt, cannot be adequately cured by a limiting instruction to a jury. The Government's proof may also attempt to show that Petrov in fact reminded the victim in this case of the prior event as a subtle threat. This evidence goes directly to

proof of the charges and will create irreparable prejudice to Mr. Gadayev. Under such circumstances, a severance of the defendants is warranted.

## ARGUMENT

**MR. GADAYEV'S VIDEOTAPED STATEMENT MUST BE SUPPRESSED ON THE GROUNDS THAT THERE WAS NO KNOWING AND VOLUNTARY WAIVER OF MIRANDA RIGHTS**

A statement made by the accused during a custodial interrogation is inadmissible at trial unless the Government can establish that there was in fact, a knowing and voluntary waiver of <u>Miranda</u> rights when making the statement. <u>Berghuis v. Thompkins</u>, 560 U.S. 370. 382 (2010). "The purpose of the <u>Miranda</u> warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary. <u>United States v. Carter</u>, 489 F.3d 528, 534 (2d Cir. 2007).

"Knowing" means with full awareness of the nature of the right being abandoned and the consequences of abandoning it and "voluntary" means by deliberate choice free from intimidation, coercion or deception. <u>United States v. Plugh</u>, 648 F.3d 118, 127 (2d Cir. 2011)(quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The Government bears the burden of proof. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168-69 (1986). As a prerequisite to admissibility, they must demonstrate that the defendant

"voluntarily, knowingly and intelligently" waived his rights. J.D.B. v. North Carolina, 131 S. Ct. 2394, 2401 (2011). (quoting Miranda v. Arizona, 384 U.S. 436, at 444, 475-76 (1966). To establish voluntariness of any statement, the Government must show that the statement was "the product of a free and essentially unconstrained choice by its maker." Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988). Voluntariness depends on the totality of the circumstances. Oregon v. Elstad, 470 U.S. 298, 309 (1985).

Although Mr. Gadayev was read his rights and he answered affirmatively when asked if he understood the warnings, it proves nothing more than he understood the words of the agent. It does not show that he understood his actual rights under Miranda. "[T]he Government must do more than show simply that a Miranda warning was given and the accused thereafter made a statement. We may imply waiver only when the prosecution has made 'the additional showing that the accused understood these rights.'" United States v. Murphy, 703 F.3d 182, 193 (2d Cir. 2012).

Mr. Gadayev read the Miranda warnings before signing it and raised two questions for the agents interrogating him. They only answered one of his questions and their failure to adequately address the other, in fact exacerbating his confusion by their answer, demonstrates a lack of waiver. Mr. Gadayev specifically stated, "without a lawyer's presence? Isn't that against me?

Isn't it against me if I answer questions without a lawyer's presence?" Mr. Gadayev was raising two issues. One, isn't it better if I have a lawyer present? Second, If the lawyer was present, wouldn't he ensure that I wouldn't say anything that could be held against me? The agents both answered "it's not held against you." Even if the agents believed they were addressing Mr. Gadayev's question, the inference if not the likelihood exists that Mr. Gadayev believed that it didn't matter whether or not he had a lawyer because "it's not held against you." Such confusion and the agent's failure to address that aspect of Mr. Gadayev's question renders the subsequent statement involuntary. The agents should have reiterated in their explanation, "anything you say could be held against you." They failed to do so specifically because Mr. Gadayev would then have a full understanding of the waiver and may have chosen to exercise his right to counsel. The Second Circuit has specifically held that you can't waive rights that you don't understand. <u>Id</u>.

**ARGUMENT**

**REGARDLESS WHETHER PROPER MIRANDA WARNINGS ARE GIVEN, A DELIBERATE TWO STAGE INTERROGATION STRATEGY EMPLOYED AGAINST MR. GADAYEV MUST RESULT IN SUPPRESSION OF THE ENSUING STATEMENT**

When Suren Gadayev was brought to F.B.I. offices following his arrest, he was taken into a room for interrogation. On the

way to the F.B.I. offices, while being transported in handcuffs by car, he was questioned without Miranda warnings and made a statement. When the interrogation began at F.B.I. offices, an agent tells Mr. Gadayev, "we did this one time, we are going to do it again." he then proceeds to Advise Mr. Gadayev of his Miranda rights.

The F.B.I. agents improperly engaged in a deliberate two-step interrogation technique designed to subvert Mr. Gadyev's Fifth Amendment rights by getting him to incriminate himself before being advised of his rights (the first statement), then reading him his rights and getting him to incriminate himself again while still disarmed by the original incrimination. Under these circumstances, the initial unwarned statement, and the later video taped warned statement, must be suppressed.

In <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), the Supreme Court found unconstitutional a deliberate two-step interrogation with an unwarned statement followed by a statement made after a full waiver of <u>Miranda</u> rights. <u>Id</u>. at 604. The Court plurality found that the "manifest purpose" of this technique is to get a confession at the outset, because "with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble." <u>Id</u>. at 613.

The Second Circuit has adopted the position set forth in <u>Seibert</u>, as an exception to the rule in <u>Oregon v. Elstad</u>, 470

U.S. 298 (1985), which would otherwise allow a second warned statement if voluntarily made. United States v. Carter, 489 F.3d 528 (2d Cir. 2007). In United States v. Capers, 627 F.3d 470, 479 (2d Cir. 2010), the Second Circuit found that to determine deliberateness, a court should review "the totality of the objective and subjective evidence surrounding the interrogation."

The Seibert plurality cited five factors for the Court to consider to determine whether a second warned statement is admissible. (1) The completeness and detail of the questions and answers in the first interrogation; (2) the overlapping content of the two statements; (3) the timing and setting of the first and second; (4) the continuity of the police personnel; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first. Missouri v. Seibert, 542 U.S. at 615. The Government has the burden of disproving by a preponderance of the evidence that it employed a deliberate two-step strategy. U.S. v. Capers, 627 F.3d at 480.

Based on the facts of this case, the Government cannot meet their burden. Experienced F.B.I. agents solicited an unwarned statement from Mr. Gadayev in the car on the way to F.B.I. offices. (1) Mr. Gadayev gave full details of underlying facts and circumstances for the offense for which he stands charged. (2) The content of the second statement which was video taped, is identical to that of the first statement. (3) The second

-10-

statement was given within 10 minutes of Mr. Gadayev's arrival at F.B.I. offices. (4) The same F.B.I. agents were present for the second statement as the first. (5) The F.B.I. agent began the second interrogation by saying "we did this one time, we are going to do it again," demonstrating a continuous interrogation.

Mr. Gadayev's second video taped confession must be suppressed on the separate grounds that it was obtained as part of a deliberate two-step process of interrogation. "[A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed." United States v. Bayer, 331 U.S. 532, 540 (1947).

## ARGUMENT

### BECAUSE OF SUBSTANTIAL PREJUDICE WHICH WHICH WOULD ENSUE FROM A JOINT TRIAL, THE TRIAL OF MR. GADAYEV SHOULD BE SEVERED FROM HIS CO-DEFENDANT

Even where offenses and/or defendants are properly joined, Rule 14 of the Federal Rules of Criminal Procedure permits a district court to sever the trial of a defendant charged with cooperative criminal activity where the defendant is prejudiced by joinder of multiple offenses or multiple defendants in a single Indictment. F. R. Crim. P. 24 ("[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate

-11-

trials of counts, sever the defendants' trials, or provide for any other relief that justice requires.") The decision whether to grant a severance rests within the discretion of the district court judge and is "virtually unreviewable." <u>United States v. Lasanta</u>, 978 F.2d 1300, 1306 (2d Cir. 1992)(quoting <u>United States v. Cardascia</u>, 951 F.2d 474, 482 (2d Cir. 1991)). However, it is well established that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." <u>United States v. Muyet</u>, 945 F.Supp 586, 596 (S.D.N.Y. 1996)(quoting <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993)).

Mr. Gadayev acknowledges the preference for joint trials and recognizes that "[a] defendant seeking severance under Rule 14 bears a heavy burden of showing that a joint trial would result in substantial prejudice." <u>Muyet</u> 945 F.Supp. at 596. However, Mr. Gadayev would suffer substantial prejudice from a joint trial for the following reasons. First, the introduction of evidence against his co-defendant, which would not be admissible against Mr. Gadayev if he were tried separately, creates a "spillover effect," which would prevent the jury from making a reliable judgment about guilt or innocence. <u>Zafiro</u>, 506 U.S. at 539.

The Government will undoubtedly seek to introduce against Mr. Petrov, evidence pursuant to Rule 404(b) of the Federal Rules of Evidence which will show that on a prior occasion, Mr. Petrov engaged in violent conduct in a financial dispute following

-12-

threats to receive payment of a disputed debt. Courts have routinely held that evidentiary determinations often result in prejudice to defendants against whom the proof is inadmissible. See, e.g., United States v. Ong, 541 F.2d 331, 338 (2d Cir. 1976). (reputation evidence created the risk of guilt by association). Specifically, severance is warranted where there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. This is especially the case where evidence of a co-defendant's wrongdoing could lead a jury to conclude that the defendant was guilty. Zafiro at 539 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 774-75 (1946)) Such evidence, which might be probative of the defendant's guilt but technically admissible only against a co-defendant poses a risk of prejudice. See Bruton v. United States, 391 U.S. 123 (1968). Curative or limiting instructions would not erase the prejudicial impact of such evidence involving substantially similar conduct and acts of violence.

Thus, one factor that courts have considered when ruling on a motion to sever is any prejudicial spillover effect that might occur.[1] See United States v. Carrasco, 968 F. Supp. 948 (S.D.N.Y. 1997). The determination of whether such prejudice exists is highly fact specific and must be evaluated on a case-by-case

---

[1] In fact, prejudicial spillover has been cited as the "most common basis on which severance is sought." United States v. Spicer, 2013 WL 871952, at *3 (quoting United States v. DiNome, 954 F.2d 839, 843 (2nd Cir. 1992)).

basis. United States v. Spicer, 2013 WL 871952 (E.D.N.Y.). Prejudicial spillover arises when proof otherwise inadmissible against a defendant becomes a part of his trial solely due to the presence of a co-defendant as to whom the evidence is proper. United States v. Williams, 181 F. Supp. 2d 267, 301-2 (S.D.N.Y. 2001). In examining the issue of prejudicial spillover, courts consider "to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial." See United States v. Villegas, 899 F.2d 1324, 1348 (2d Cir. 1990). The second Circuit recognizes the possibility that a defendant may incur spillover prejudice in a joint trial at which prior act evidence is admitted against a co-defendant. See United States v. Gelzer, 50 F.3d 1133, 1140 (2d Cir. 1995).

The Supreme Court, in United States v. Zafiro held that Rule 14 does not automatically require severance whenever prejudice is shown, but that it is up to the district court to craft the relief for an aggrieved party. 506 U.S. at 538-39. The Government may argue that limiting instructions can address the prejudice. However, courts continue to grant severance when they find that the relevant evidence rises to a level of prejudice that is unable to be cured by a jury instruction. See e.g., United States v. James, 2007 WL 1579978, slip op. at *3 (E.D.N.Y. 2007) (observing that a limiting instruction is not a cure-all to undue prejudice and denying the government's motion to introduce

evidence of a co-defendant's uncharged crimes); United States v. Catapano, 2008 WL 2222013, at *17 (E.D.N.Y. May 22, 2008) (finding a joint trial unduly prejudicial when there was substantial evidence that would not have been admitted against defendant otherwise). When the prior bad act is particularly egregious such as an act of violence, which is the case here, severance may be more appropriate because the risk of substantial prejudice is greater. United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991).

Another factor that the Second Circuit has used in their analysis is whether the prior offense is very similar to the crime charged. United States v. Figueroa, 618 F.2d 934, 944 (2d Cir. 1980). This would make it more likely that the jury erroneously equates the prior bad act with characteristics of Mr. Gadayev and jury instructions have a less mitigating effect. Such is also the case here where the Government seeks to prove that the co-defendant had a prior business relationship, claimed that he was owed money, made threats to recove the money and engaged in acts of violence to get the money. Prior bad acts of our client's co-defendant would result in jury confusion and undue prejudice. See e.g., United States v. Dowtin, 2012 WL 7679552, at *1 (E.D.N.Y. 2012).

## CONCLUSION

For all the foregoing reasons, the Court should issue an

order granting Mr. Gadayev's motion to suppress statements and for a severance, pursuant to the Fifth and Sixth Amendments of the United States Constitution and Rule 14 of the Federal Rules of Criminal Procedure, and for such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        May 15, 2015

                                    Respectfully submitted,

                                    DAVID E. PATTON, ESQ.
                                    Federal Defenders of New York
                        By:         _____
                                    **ROBERT M. BAUM, ESQ.**
                                    Attorney for Defendant
                                      **Suren Gadayev**
                                    52 Duane Street - 10th Floor
                                    New York, New York 10007